# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GIOVANNI MORALES, | : | Civil No. 1:24-CV-01081 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BIERLY, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are multiple motions filed by both Plaintiff and Defendants in this action including a motion for summary judgment filed by Plaintiff, Doc. 36, a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) filed by Defendants, Doc. 71, two motions to appoint counsel filed by Plaintiff, Docs. 74 and 94, a motion to release prison GTL messages filed by Defendants, Doc. 84, a motion to compel filed by Plaintiff, Doc. 88, a motion for an extension of time to file a reply to this motion filed by Plaintiff, Doc. 95, and a motion to compel discovery filed by Defendants, Doc. 97.  For the reasons explained in this Memorandum, The court will grant Defendants' motion for judgment on the pleadings, deny Plaintiff's motion for summary judgment, deny Plaintiff's motions for appointment of counsel, deny Defendants' motion to release prison GTL messages, grant Plaintiff's motion for an extension of time to file a reply, and grant Defendants' motion to compel.

## BACKGROUND AND PROCEDURAL HISTORY

Giovanni Morales ("Plaintiff") initiated this action by filing a complaint dated June 24, 2024 and received by the court on July 1, 2024.  (Doc. 1.)

 That same day, the court entered an administrative order directing Plaintiff to pay the filing fee or file a motion to proceed *in forma pauperis*.  (Doc. 5.)  On July 12, 2024, August 5, 2024, and September 27, 2024, Plaintiff filed a certified motion to proceed *in forma pauperis*.  (Docs. 6, 9, 12.)  Plaintiff also filed uncertified prison trust account statements on August 5, 2024 and September 27, 2024.  (Docs. 10, 13.)

This complaint named twenty-five defendants.  (Doc. 1, pp. 1–4.)[1] However, it only addressed the alleged actions of twenty individuals.  (*Id*., pp. 5–11.)  Following screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court dismissed claims against five of the twenty-five defendants who were not alleged to have any taken any relevant action.  (Doc. 16.)  The remaining twenty Defendants were served.  (Docs. 17, 21.)  These twenty defendants filed an answer on December 23, 2024.  (Doc. 25.)  The court then entered a case management order setting forth a discovery and briefing schedule with dispositive orders due on by July 31, 2025.  (Doc. 26.)

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

On May 20, 2025, the court received Plaintiff's motion for summary judgment, a brief in support, and a statement of facts. (Docs. 36, 37, 38.) On May 27, 2025, the court entered an amended case management order extending the deadline for dispositive motions and Defendants' deadline to respond to the pending motion for summary judgment to August 29, 2025. (Doc. 64.)

On May 30, 2025, Defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. 71.)

The court received and docketed Plaintiff's motion for appointment of counsel on June 13, 2025. (Doc. 74.)

On July 24, 2025, Defendants filed a motion for an order to release prison GTL messages. (Doc. 84.) On August 4, 2025, the court received and docketed Plaintiff's motion to compel, seeking video evidence and medical records. (Doc. 88.)

On August 15, 2025, Plaintiff filed another motion for appointment of counsel. (Doc. 94.) The same day, Plaintiff filed a motion for an extension of time to file a reply brief in support of his motion to compel. (Doc. 95.)

On September 23, 2025, Defendants file a motion to compel discovery, alleging that Plaintiff has failed to provide any responses during the discovery period. (Doc. 97.)

**DISCUSSION**

**A. Defendants' Motion for Judgment on the Pleadings Will Be Granted**.

Thirteen of the twenty Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Doc. 71.)

### 1.  Summary of Complaint

In the complaint, Plaintiff names a total of twenty remaining defendants.[2] Plaintiff alleges that on December 28, 2023, Defendants Cassel, Bishop, and Bush refused to feed him by not giving him his tray.  (Doc. 1, p. 5.)  Plaintiff alleges that he had complied with all the rules, orders, and directives.  (*Id*.)  He states that they told him "Fuck you, you['re] burnt" and he stated that he was going to file an allegation of abuse and other reports against them.  (*Id*.)  He further alleges that they said they would spray him with O.C. spray and stated that "I hope we make you hang it up."  (*Id*.)

He alleges that on December 29, 2023, Defendants McCray and Phoenix refused to feed Plaintiff.  (*Id*.)  He states that Defendant McCray stated "[m]y boys said don't feed Morales."  (*Id*.)  Plaintiff alleges that Defendant Phoenix responded with "[h]opefully he dies I can use time off."  (*Id*.)  He further states that Defendant Rodgers stated "yeah hurts[,] don't it."  (*Id*.)

---

[2] Five defendants were dismissed by court order on October 25, 2024.  (Doc. 16.)

Plaintiff states that on January 3, 2024, Defendants Bush, Adams, and Johnson starved him by not giving him his tray to eat and Defendant Bush stated "you['re] burnt." (*Id*.) He states that they continued to not feed him. (*Id*.)

Plaintiff alleges that on January 25, 2024 and February 2, 2024, "they" retaliated against Plaintiff by not letting him go visit his family. (*Id*., p. 11.)

Plaintiff alleges that on February 12, 2024, Defendant Bloom refused to feed him and said, "[d]idn't they say if you continue to file reports you weren't going to eat," and laughed. (*Id*., p. 5.)

Plaintiff states that on February 14, 2024, he was in unsanitary living conditions with fecal matter, urine, and O.C. residue in the cell. (*Id*.) Plaintiff alleges that he told Defendant Booher, and he did nothing. (*Id*.) He alleges that the Department of Corrections ("DOC") conceded to the presence of fecal matter and urine in the cell in their grievance response. (*Id*.)

Plaintiff alleges that on March 2, 2024, Defendant Bierly was collecting trays and asked Plaintiff to give him a tray. (*Id*., p. 6.) He told Defendant Bierly "I don't have one." (*Id*.) Defendant Bierly asked a second time and told Plaintiff that he was going to spray him. (*Id*.) Plaintiff told him he could not be sprayed because he had severe asthma and one lung, and Defendant Bierly alleged stated "[e]ven better" and sprayed him with O.C. spray. (*Id*.)

Plaintiff alleges that on March 11, 2024, Defendant Davidson refused to give him his tray, denied him access to the yard, and said "[e]veryone here knows you get nothing," and "you['re] burnt." (*Id.*, p. 6.) The next day, Defendants Durst and Glunt refused to let him go to the yard "in Retaliation." (*Id.*, p. 6.) He alleges that Defendant Nickel then shut off his water because all the Defendants said he was flooding, which he alleges the paperwork and camera footage would show to be false. (*Id.*) He states that these actions prevented him from practicing his religious observance of Wu'do due to not having the required water. (*Id.*) He also states that he was retaliated against with a fabricated "709" stating that he threw bodily fluids by Defendant Durst. (*Id.*)

Plaintiff states that on March 14, 2024, he told Defendants Booher, Reed, and Bookheimer of the above allegations, and Defendant Booher said "[i]t was a[n] 'Administration Error.'" (*Id.*) He states that these three Defendants failed to do anything about his complaints. (*Id.*)

Plaintiff alleges that on March 25, 2024, Defendant Davidson harassed Plaintiff for filing a report against him, stating "you a pussy, you thought you was getting me off the RHU." (*Id.*)

Plaintiff alleges that on March 27, 2024, Defendants Durst and Glunt refused to let Plaintiff go to the yard in retaliation and both of them said Plaintiff was "burnt." (*Id.*, p. 7.)

Plaintiff states that on April 3, 2024, Defendant Nickel refused to give him a tray pretending as if he was talking to Plaintiff. (*Id*.) Through July of 2024, Defendant Nickel continued to withhold food from Plaintiff's breakfast and lunch trays. (*Id*.)

Plaintiff alleges that on June 10, 2024, Defendants Heister, Specht, and McKnight became verbally abusive about Plaintiff filing reports and going to the hospital after telling them about his asthma and lung condition. (*Id*.) Plaintiff stated that Defendant McKnight attempted to slam him without issuing any orders or Plaintiff demonstrating any aggression. (*Id*.) Following this attempt to slam him, Defendant McKnight did slam him to the ground, sprayed him with O.C. spray, and hit him in the face with the O.C. spray can. (*Id*.) The "other Defendants" proceeded to strike Plaintiff while he was in restraints and on the ground, including kicking him in the face. (*Id*.) Plaintiff states that he asked for his inhaler and was refused, with Defendant McKnight stating "[s]top telling dumb ass." (*Id*.) Plaintiff stated that he was having difficulty breathing and he went to the hospital due to his lung condition and asthma. (*Id*.)

Based on these alleged facts, Plaintiff brought claims of cruel and unusual punishment, excessive force, intentional infliction of emotional distress, failure to protect, failure to intervene, failure to supervise, failure to act, failure to report, deliberate indifference, retaliation, negligence, assault and battery, starvation,

conditions of confinement, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and false imprisonment. (*Id.*, p. 8.)

### 2. Standard

After the pleadings are closed, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts utilize the same standards for motions for judgments on the pleadings pursuant to Rule 12(c) as for a motion to dismiss pursuant to Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("there is no material difference in the applicable legal standards"). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v.*

*Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

### 3. Defendant Rodgers

Defendants challenge the claims against Defendant Rodgers based on a lack of personal involvement.  (Doc. 72, pp. 17–18.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

In the complaint, Plaintiff's only allegation about Defendant Rodgers is that he stated "yeah hurts[,] don't it."  (Doc. 1, p. 5.)  He does not allege any action taken against Plaintiff, merely this one comment.  This comment is insufficient to establish liability under 42 U.S.C. § 1983, and the court will grant Defendants' motion as to the claims against Defendant Rodgers.

### 4.  Tort Claims

In the complaint, Plaintiff states claims for intentional infliction of emotional distress, negligence, assault, battery, and false imprisonment.  (Doc. 1, p. 8.)

### i.  Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe."  *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982).

Defendants allege that Defendants Adams, Booher, Bookheimer, Bishop, Bloom, Bush, Cassel, Davidson, Durst, Glunt, Johnson, McGary, Nickel, Phoenix, and Reed only made verbal comments against Plaintiff or occasionally denied Plaintiff a meal or time in the yard, and these actions are not sufficient to establish the extreme and outrageous conduct required under the first element.  (Doc. 72, pp. 20–21.)  The "'extreme and outrageous' standard is not easily satisfied" and "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" do not constitute the type of conduct necessary to sustain a claim of intentional infliction of emotional distress.  *Shumate v. Twin Wire Hospitality, LLC*, 655 F.Supp.2d 521, 543 (M.D. Pa. 2019) (*quoting Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307, 310 (M.D. Pa. 1988)).

Therefore, the mere comments and sporadic denial of meals and time in the yard do not meet the standard of "extreme and outrageous" conduct. The court will grant Defendants' motion as to the claims of intentional infliction of emotional distress associated with the verbal comments and occasional denial of meals and time in the yard for these Defendants.

### ii. Assault and Battery

Defendants assert that words themselves are not sufficient to establish an assault and battery claim under state law and, thus, such claims against Defendants Adams, Booher, Bookheimer, Bishop, Bloom, Bush, Cassel, Davidson, Durst, Glunt, Johnson, McGary, Nickel, Phoenix, and Reed must be dismissed. (Doc. 72, pp. 19–20.)

Under Pennsylvania law, assault has been defined as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." *Regan v. Upper Darby Twp.*, 363 Fed. App'x 917, 921 (3d Cir. 2010); *see also Sides v. Cleland*, 436 Pa. Super. 618, 626, 648 A.2d 793 (1994) ("An assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact.") (citing Restatement (Second) of Torts § 21). "The plaintiff's apprehension must be reasonable, and the actor must take some affirmative action in an attempt to carry out the threatened harm." *Nayak v. Herbison*, 2015 WL 13738992, at *6 (M.D. Pa.

June 4, 2015) (citing *Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d 216 (1960)).

Threatening words alone are insufficient to put a person in reasonable

apprehension of physical injury or offensive touching. *Regan*, 363 Fed. App'x at

921–22.

    In contrast, a battery requires proof that the defendant acted with the intent

to cause harmful or offensive bodily contact with the person of the plaintiff and

that such contact actually followed. *See Fulks ex rel. Daniel v. Gasper*, 439

F.Supp.2d 372, 379 (M.D. Pa. 2006); *Montgomery v. Bazaz–Sehgal*, 742 A.2d

1125, 1130 (Pa. Super. Ct. 1999); *Dull v. W. Manchester Twp. Police Dept*, 604 F.

Supp. 2d 739, 754 (M.D. Pa. 2009).

    Plaintiff does not allege that Defendants Adams, Booher, Bookheimer,

Bishop, Bloom, Bush, Cassel, Davidson, Durst, Glunt, Johnson, McGary, Nickel,

Phoenix, and Reed did anything more than make verbal threats. (Doc. 1.)

Therefore, the court will grant Defendants' motion as to all claims of assault and

battery against these Defendants.

### iii. False Imprisonment

    Plaintiff listed false imprisonment among his claims. (Doc. 1, p. 8.)

Defendants list it among the tort claims raised under state law. (Doc. 72, p. 21.)

However, the court will also consider whether Plaintiff has pleaded this claim as

arising under the Fourth Amendment.

"To state a claim for false imprisonment, a plaintiff must establish: (1) that []he was detained; and (2) that the detention was unlawful." *James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012). Considering Plaintiff was already incarcerated during this period, his alleged false imprisonment fails. While the court acknowledges that Plaintiff was detained, he has failed to allege that this detention was unlawful as he is not challenging the underlying criminal conviction.

Here, Plaintiff does not state who put him in restraints on June 10, 2025. (Doc. 1, p. 7.) Instead, he only alleges that he was kicked while in restraints. (*Id.*) The court liberally construes the alleged restraint of Plaintiff on June 10, 2024 as a potential increase in the level of detention and the potential factual source of this claim. (Doc. 1, p. 7.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. An inmate has some constitutional protection under the Fourth Amendment, but an inmate's rights are limited by the need to maintain prison security. *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012); *see also Bell v. Wolfish, 441* U.S. 441, 558–60 (1979). The Fourth Amendment's application to prison settings has been limited to issues regarding bodily integrity. *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) ("We conclude that a right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent

13

with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context.").

However, as noted, Plaintiff does not allege who placed him in restraints. Therefore, the court will grant Defendants' motion as to all claims of false imprisonment.

### 5. Retaliation Claims

Defendants are seeking judgment in their favor on Plaintiff's retaliation claims because he has not alleged any constitutionally protected activity. (Doc. 72, pp. 24–25.)

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015). A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

It is unclear from the face of the complaint what activity Plaintiff alleges he was engaged in that was a motivating factor for Defendants' alleged retaliation.  In the complaint, Plaintiff threatens to file a grievance, but he does not allege that he actually filed any such grievance against any Defendants.  (Doc. 1, p. 5.)

The only exception is that Plaintiff alleges that on March 25, 2024, Defendant Davidson harassed Plaintiff for filing a report against him, stating "you a pussy, you thought you was getting me off the RHU."  (Doc. 1.)  Here, verbal harassment is not sufficient to establish the second factor set forth in *Rauser*: that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  Verbal harassment is not sufficient to meet this standard.  *See Marten v. Hunt*, 479 Fed.Appx. 436 (3d Cir. 2012); *Lewis v. Wetzel*, 153 F.Supp.3d 678 (M.D. Pa. 2015).  As such, the retaliation claims cannot survive Defendants' Rule 12(c) motion.

## 6. Eighth Amendment Claims

Plaintiff brought multiple claims that potentially fall under the umbrella of the Eighth Amendment in his litany of legal claims, including cruel and unusual punishment, excessive force, failure to protect, failure to intervene, failure to act, failure to supervise, failure to report, deliberate indifference, and starvation.  (Doc. 1, p. 8.)

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. Amend. VIII.  Prison conditions constitute cruel and unusual punishment if they result in a serious deprivation of the prisoner's basic human needs.  *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). Additionally, prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  The Eighth Amendment's protection against cruel and unusual punishment is also the "primary source of substantive protection in cases ... where the deliberate use of force is challenged as excessive and unjustified," (i.e. claims of excessive force).  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).

### i.  Verbal Harassment

It is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983.  *See Marten*, 479 Fed.Appx. 436; *Lewis*, 153 F.Supp.3d 678; *see also Harris v. Ferguson*, 3:16-cv-1965, 2017 WL 3611752, at *4-5 (M.D. Pa. Aug. 22, 2017) (granting summary judgment to defendants on § 1983 claims regarding verbal sexual harassment because the record did not show that plaintiff suffered injury or damage); *Maclean v. Secor*, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995) ("It is well established that verbal harassment or threats will not ... without some reinforcing act accompanying them, state a constitutional claim.").

For all claims raised against Defendants premised on merely verbal threats or harassment, all Eighth Amendment claims will not survive Defendants' Rule 12(c) motion.

### ii. Denial of Meals

In addition to the verbal harassment Plaintiff alleged, Defendants are challenging the Eighth Amendment claims associated with the denial of meals or portions of meals.  (Doc. 72, pp. 33–34.)

The Eighth Amendment requires that inmates be provided well-balanced meals containing sufficient nutritional value to preserve health.  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).  But "[t]he deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'"  *Id.* (quoting *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998)).  "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation."  *Id.*  The "deprivation of a single meal does not rise to the level of an Eighth Amendment violation because 'only a substantial deprivation of food to a prisoner' states a viable Eighth Amendment claim."  *Rieco v. Moran*, No. 15-2529, 2015 WL 7730985, at *1 (3d Cir. Dec. 1, 2015) (quoting *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009)).

Here, Plaintiff alleges he was denied a meal on December 28, 2023, December 29, 2023, January 3, 2024, February 12, 2024, March 2, 2024, March

11, 2024, and April 3, 2024.  (Doc. 1.)  He further alleges that he was only provided part of his meal by two Defendants from April of 2024 through July of 2024.  (*Id*.)  The Third Circuit has expressly held that the denial of three meals over two days did not rise to the level of an Eighth Amendment violation. *Zanders v. Ferko,* 439 F. App'x 158, 160 (3d Cir. 2011).  Therefore, the denial of seven meals on different dates in the course of about three months and the partial denial of meals does not rise to the level of an Eighth Amendment violation.  The court will grant Defendants' motion as to the Eighth Amendment claims premised on the denial of meals.

### iii. Denial of Time in the Yard

Plaintiff alleges that he was denied access to the yard at on March 11, 2024 and March 27, 2024.  (Doc. 1.)  Defendants allege that this occasional denial of time in the yard does not constitute an Eighth Amendment violation.  (Doc. 72, pp. 33–34.)

The Third Circuit has held that in a case such as this, courts are to "consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation."  *Barndt v. Wenerowicz*, 698 Fed. Appx. 673, 677 (3d Cir. 2017) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *see also Rodgers v. Jabe*, 43 F.3d 1082, 1086

(6th Cir. 1995); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)).  Here,

Plaintiff alleges that he was twice denied time in the yard in the month of March of

2024.  Thus, there was no constitutional violation here.  *See Barndt*, 698 Fed.

Appx. at 677 (denial of out of cell exercise and showers for twenty-eight days was

not a substantial violation); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001)

(finding denial of yard privileges for no more than ninety days not cruel and

unusual punishment); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989)

(finding denial of outdoor recreation for thirteen days not cruel and unusual

punishment); *Shakka v. Smith*, 71 F.3d 162, 167-68 (4th Cir. 1995) (three days

without showers not violative of the Eighth Amendment).  The court will grant

Defendants' motion as to all Eighth Amendment claims associated with the denial

of time in the yard.

### 7. Surviving Claims

The claims that survive Defendants' motion for judgment on the pleadings

include all claims of negligence, Eighth Amendment claims associated with the

March 2, 2024 use of force and the June 10, 2024 use of force, the Eighth

Amendment claims associated with the conditions of confinement from February

14, 2024, and the RLUIPA claim.  (Doc. 1.)

**B. Plaintiff's Motion for Summary Judgment Will Be Denied**.

Plaintiff seeks summary judgment on the Eighth Amendment claims of excessive use of force for the April 2, 2024 use of O.C. Spray and the June 10, 2024 use of O.C. Spray, restraint, and use of physical force.  (Doc. 37, p. 3.) Defendants did not respond to the pending motion.

### 1. Summary Judgment Standard

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher*

*Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial."  *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the

jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2. Discussion

First, the court notes that Plaintiff did not allege the use of O.C. Spray on April 2, 2024 in his complaint. The only alleged action in April of 2024 is the allegation that on April 3, 2024, Defendant Nickel refused to give him a tray pretending as if he was talking to Plaintiff. (Doc. 1, p. 7.) Plaintiff did allege the use of O.C. spray on March 2, 2024 after he refused to return a tray he alleges he never received. (*Id.*, p. 6.) In contrast, Plaintiff's allegations of an April 2, 2024 use of O.C. spray in his motion was caused by an accusation that he covered up his cell door. (Doc. 38-1.) Therefore, the court cannot simply assume that Plaintiff's complaint included an incorrect date, and will deny Plaintiff's motion for summary judgment on the newly alleged April 2, 2024 use of O.C. Spray.

Plaintiff did include his allegation of excessive use of force on June 10, 2024 in his complaint. (Doc. 1, p. 7.) Plaintiff presented a statement of undisputed facts that on June 10, 2024, he had returned from the hospital following treatment for his asthma, which Plaintiff alleges Defendants McKnight, Specht, Heister, and Fisher knew, and despite this knowledge, Defendants McKnight and Specht used

excessive amounts of O.C. Spray, that Defendants McKnight and Heister slammed him to the hard floor, and that Defendants McKnight, Heister, Fisher, and Specht dragged him to the intake module and assaulted him. (Doc. 38.) Plaintiff's statement of facts also states that investigation records concluded that Defendant McKnight was wrong for deploying the OC spray in his face, and that Defendants Heister, Fisher, Specht, and McKnight should not have dragged him to the module. (*Id*.) He further states that it is undisputed that as a result of these actions, he suffered respiratory distress. (*Id*.)

Plaintiff presented a DOC memo that identified problems with Defendant McKnight's conduct, "I agree with previous review that OC should not be used at that close distance," and "[i]nmate should not be drug on the floor to the module." (Doc. 38-2, p. 4.) An earlier memo states that Defendant Heister noted improper injuries and that Defendant McKnight should not have used O.C. spray so close to the inmate's face. (*Id*, p. 6.)

Plaintiff did request the production of video evidence by Defendants in support of his motion for summary judgment, which the court ordered. (Docs. 40, 60.) However, he changed the identifying factors for the video evidence at a status conference, and Defendants stated that there was no video available for the newly identified dates and times. (Doc. 65.)

Based on the evidence presented by Plaintiff, he has failed to meet his burden of establishing an excessive force claim from the force used on June 10, 2024.  The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases . . . where the deliberate use of force is challenged as excessive and unjustified."  *See Whitley*, 475 U.S. at 327.  The question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6–7, (1992) (citing *Whitley*, 475 U.S. at 312).  Therefore, the facts at issue are those leading up the use of force and the extent of the use of force.

Plaintiff's alleged facts do not address the short period leading up the to the use of force.  The court acknowledges that the DOC found fault with the use of force that day by concluding that O.C. spray should not be used so close to an inmate, but this does not necessarily result in a finding that there was a constitutional violation.  It is axiomatic that "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation."  *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Seism*, 449 F. App'x 232, 235 (3d Cir. 2011) (explaining that, even if prison officials violated a regulation, such a violation "is

not actionable").  Therefore, if Defendants were found to have violated a policy, it does not mean that they have violated the Eighth Amendment.  Without more evidence concerning the events leading up to the use of force, the court must deny Plaintiff's motion for summary judgment and allow this claim to proceed.

### C. Plaintiff's Motion for Appointment of Counsel Will Be Denied.

There are two pending motions for appointment of counsel filed by Plaintiff. (Docs. 74, 94.)  Plaintiff seeks appointment of counsel premised on the complexity of the legal issues, an inability to retain counsel on his own, and his view that the case will turn on credibility determinations and the testimony of expert witnesses. (Doc. 74.)

Although prisoners have no constitutional or statutory right to appointment of counsel in a civil case, the court has discretion to "request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1); *see Houser v. Folino*, 927 F.3d 693, 697 (3d Cir. 2019).  The appointment of counsel is a privilege, not a statutory or constitutional right.  *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances after a finding that the plaintiff's case has arguable merit in fact and law.  *Tabron*, 6 F.3d at 155.  If the court finds that the plaintiff has crossed this

threshold inquiry, the court should consider the following factors in deciding

whether to request a lawyer to represent an indigent plaintiff:

(1)   the plaintiff's ability to present his or her own case;
(2)   the complexity of the legal issues;
(3)   the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
(4)   the plaintiff's ability to retain counsel on his or her own behalf;
(5)   the extent to which a case is likely to turn on credibility determinations, and;
(6)   whether the case will require the testimony of expert witnesses.

*Tabron*, 6 F.3d at 155-57.  This list of factors is non-exhaustive, and no single

factor is determinative.  *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)

(citing *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997)).  Instead, these

factors serve as guideposts for the district courts to ensure that the precious

commodity of volunteer attorney time is not "wasted on frivolous cases."  (*Id.*)

Here, the Plaintiff has demonstrated the ability to litigate this case on his

own up to this point, and the court will deny his motion without prejudice.  This

motion may be renewed by Plaintiff or considered *sua sponte* if deemed necessary

by the court.

### D. Defendants' Motion to Release Prison GTL Messages Will Be Denied Without Prejudice.

Defendants are seeking the release of messages with Clarissa Garcia, Lilvet

Leandry-Morales, and Roxanne Leandry-Morales through the GTL message

system.  (Doc. 84.)  They allege that these messages are protected by the Wiretap Act, and a court order is necessary for their production.  (*Id.*)

Pennsylvania's Wiretap Act provides that in general, it is illegal for a party to intentionally intercept any wire, electronic or oral communication.  18 Pa.C.S.A. § 5703(1).  There are, however, exceptions to this rule under the Wiretap Act.  18 Pa.C.S.A. § 5704.  Defendants do not address any of these exceptions.

One of these exceptions, Section 5704(4), may be pertinent here: "It shall not be unlawful and no prior court approval shall be required under this chapter for ... a person, to intercept a wire, electronic or oral communication, where *all parties to the communication have given prior consent to such interception.*"  18 Pa.C.S.A. 5704(4) (emphasis added).  "Prior consent" exists when the person being recorded "knew or should have known, that the conversation was being recorded." *Commonwealth v. Diego*, 119 A.3d 370, 381 (Pa. Super. 2015).  To determine whether a person "should have known" that the conversation was being recorded, we apply the objective standard of a "reasonably intelligent person" who "consents by conduct."  *Commonwealth v. Byrd*, 235 A.3d 311, 320 (Pa. 2020) (holding, when inmate was recorded making threats to complainant during phone call, "our focus is not on [the inmate's] subjective knowledge.  Rather, the standard is the objective knowledge of a reasonably intelligent person following the warning that the call may be monitored or recorded").

Since Defendants' motion does not discuss any exceptions to the Wiretap Act or any disclosures that may have been made to those who communicate via the GTL system, the motion will be denied without prejudice.

**E.  Plaintiff's Motion for Extension of Time Will Be Granted.**

Plaintiff allegedly filed a motion to compel and brief in support that was received and docketed by the court on August 4, 2025.  (Docs. 88, 89.)  These documents are signed "/s/ Giovanni Leardry Morales."  (*Id*.)  This signature is drastically different than the signature found on previous filings and subsequent filings.  (Docs. 30, 33, 36, 95.)  Federal Rule of Civil Procedure 11 states that every written motion must be signed personally by the party if that party is unrepresented.  The court "must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  Fed. R. Civ. P. 11.  It is evident that Plaintiff did not sign his motion to compel or his brief in support.  Therefore, the court will strike these filings from the docket unless they are promptly personally signed by Plaintiff.  Considering Plaintiff will be granted a short period of time to sign the filings, the court will grant Plaintiff's motion for an extension of time to file a reply.

**F.  Defendants' Motion to Compel Will Be Granted.**

Defendants allege that there are deficiencies in Plaintiff's responses to their discovery requests.  (Doc. 98.)  Plaintiff has not responded to this motion.

Defendants allege that they sent discovery requests to Plaintiff on February 10, 2025 and a letter following up on the request on April 2, 2025.  (Docs. 98-1, 98-2.)  Defendants alleged that they followed up with a letter on April 14, 2025. (Doc. 98.)  Plaintiff did respond on May 29, 2025 and June 17, 2025, however, these responses are alleged to be incomplete.  (Docs. 98-4, 98-5.)  Defendants sent Plaintiff a letter alerting him to the deficiencies on June 25, 2025 along with a second discovery request.  (Doc. 98-6, Doc. 98-7.)  They sent another letter on July 17, 2025.  (Doc. 98-8.)  Defendants allege that they have not received a response. (Doc. 98.)

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . Information within the scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(1); *see also Democratic Nat'l Committee v. Republican Nat'l Committee*, 2019 WL 117555, at *2 (3rd Cir. Jan. 7, 2019) ("The court may limit discovery to ensure its scope is proportional to the needs of a case.").  Federal Rule of Civil Procedure 37 provides that a party may move to compel a response to a discovery request when the receiving "party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(3)(B)(iv).  Therefore, the court will grant Defendants' motion to

compel and order Plaintiff to respond to Defendants' discovery requests by December 31, 2025.

### G. Plaintiff Will Be Granted Leave to Amend his Complaint.

Pro se litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate v. Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). Plaintiff will be granted leave to amend his complaint. Plaintiff will file an amended complaint by December 17, 2025.

### CONCLUSION

For the above-stated reasons, Defendants' motion for judgment on the pleadings will be granted, Plaintiff's motion for summary judgment will be denied, Plaintiff's motions for appointment of counsel will be denied, Defendants' motion to release prison GTL messages will be denied without prejudice, Plaintiff's motion for an extension of time will be granted, Defendant's motion to compel will be granted, and Plaintiff will be given leave to file an amended complaint. Additionally, the court will extend the deadline for discovery and dispositive orders. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: November 17, 2025